**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NEW HAMPSHIRE**

Granite State Trade School, LLC

   v.                                            Civil No. 15-cv-223-LM
                                                         Opinion No. 2015 DNH 151
The New Hampshire School of
Mechanical Trades, Inc.

**O R D E R**

New Hampshire, home to extensive granite formations and innumerable quarries, has long been known as the Granite State. The above-captioned dispute raises a novel, but ultimately basic question: are the terms "New Hampshire" and "Granite State" so synonymous that the public is likely to be confused by their interchangeable use in commercial advertising?

The plaintiff, Granite State Trade School, LLC ("Granite State"), and the defendant, The New Hampshire School of Mechanical Trades, Inc. ("NHSMT"), are both in the business of training plumbers, gas fitters, and other tradesmen. Granite State has brought this lawsuit, alleging that NHSMT's use of two website addresses (known as "URLs")[1] is deceptive, and may cause prospective students to confuse the two schools.

---

[1] "URL" stands for uniform resource locator.

Granite State seeks a preliminary injunction barring NHSMT from using these URLs during the pendency of the litigation. NHSMT objects, and the court held a full-day evidentiary hearing on July 7, 2015.  For the reasons that follow, Granite State's motion for preliminary injunction is denied.

## Background

Since its founding in 2006, Granite State has used the URL www.granitestatetradeschool.com.  Through its website, Granite State advertises its services to prospective students, and allows students to register for courses online.

NHSMT was founded in 2010, and began offering courses in 2012.  Like Granite State, NHSMT uses its website to promote its services and to allow students to register for courses. Initially, NHSMT exclusively used the URL www.tnhsmt.com, a basic acronym of its name.  Later, however, NHSMT began using the URLs www.nhtradeschool.com and www.nhtradeschool.net in its advertisements.  While the content of NHSMT's website still appears at www.tnhsmt.com, the www.nhtradeschool.com and .net URLs automatically redirect users to www.tnhsmt.com.

In this dispute, Granite State seeks to bar NHSMT's use of the www.nhtradeschool.com and .net URLs.  Granite State maintains that NHSMT's use of these URLs is likely to mislead

prospective students into confusing the two schools because of their similarity to www.granitestatetradeschool.com.

The court will summarize the evidence offered at the July 7 hearing before discussing the merits of Granite State's motion for preliminary injunctive relief.

I.   <u>Granite State's Evidence</u>

Granite State offered the testimony of three witnesses: (1) James Fusco, the founder and owner of Granite State; (2) John Brulotte, a former Granite State student; and (3) Karen Chansky, an internet marketing professional.

Mr. Fusco testified that he founded Granite State in 2006. Granite State currently offers four courses in gas heating installation and maintenance, all of which Mr. Fusco teaches personally.  These are the only live courses that Granite State offers, though students may register for an online plumbing training and certification program, for which Mr. Fusco serves as an in-person mentor.

Mr. Fusco testified that to advertise its services, Granite State relies primarily on radio advertisements and direct mailings to prospective students.  Since 2007, Granite State has spent some $58,000 on this type of advertising, or approximately $7,250 per year.  In addition, Mr. Fusco testified that Granite State has used the URL www.granitestatetradeschool.com

3

continuously since its founding in 2006, and has spent a total of some $19,000 designing and maintaining its website.

Mr. Fusco also testified regarding Granite State's financial performance.  According to Mr. Fusco, Granite State experienced a precipitous downturn in student enrollment beginning in April of 2015, approximately the same time that Mr. Fusco first learned that NHSMT was airing a radio advertisement directing prospective students to the www.nhtradeschool.com URL. Mr. Fusco explained his belief that the enrollment decline is attributable to students confusing the two schools, and he noted that his secretary often receives telephone calls from students attempting to contact NHSMT.

Next, Granite State offered the testimony of John Brulotte, the owner of a pipe and gas fitting company.  Mr. Brulotte testified that he had taken courses at Granite State in the past and had enjoyed working with Mr. Fusco, though he acknowledged that he could not recall the name of Mr. Fusco's school.  Mr. Brulotte testified that, in April of 2015, he sought to enroll in one of Mr. Fusco's recertification courses at Granite State. Unsure of the name of Mr. Fusco's school, Mr. Brulotte conducted an internet search for "New Hampshire trade school."  Believing he had found Mr. Fusco's website, Mr. Brulotte clicked on the first search result.  In fact, Mr. Brulotte had found NHSMT's website, and he inadvertently enrolled himself in a similar

4

course that NHSMT was offering.  Mr. Brulotte did not discover his mistake until he arrived at Granite State to find that no such course was being offered that day.  On cross examination, Mr. Brulotte acknowledged that he had been in a hurry and had not paid careful attention when conducting his search and registering for the course.

Granite State's final witness was Karen Chansky, a marketing consultant Granite State had hired to increase its web traffic.  Ms. Chansky began her work by analyzing the traffic on www.granitestatetradeschool.com for the period of February to June of 2015.  See Pl.'s Ex. 10.  Reproduced in relevant part, Ms. Chansky's web traffic analysis showed the following data:

|  | Feb. 2015 | Mar. 2015 | Apr. 2015 | May 2015 | June 2015 |
|---|---|---|---|---|---|
| **Organic Search** | 596 | 748 | 595 | 439 | 569 |
| **% Organic** | 73% | 57% | 55% | 32% | 31% |
| **Referral** | 121 | 409 | 328 | 329 | 423 |
| **Direct** | 96 | 157 | 154 | 616 | 845 |
| **Social** | 4 | 4 | 2 | 2 | 3 |
| **Total** | 817 | 1318 | 1079 | 1386 | 1840 |

Ms. Chansky explained this data as follows.  Internet users may reach a website through a variety of channels.  At the most basic level, an internet user might reach a website by typing

its URL directly into the internet browser.  In Ms. Chansky's
data set, these users would be captured in the "Direct" row.
For example, this data shows that in March of 2015, 157 users
reached Granite State's website by typing the URL
www.granitestatetradeschool.com directly into their browser.

Second, an internet user might reach a particular website
through a search engine, like Google.  Using keyword search
terms, the user will search for relevant websites, then access a
particular website by clicking on a link on the results page.
There is a catch, however, because not all links are created
equal.  On a typical Google search results page, for example,
the links at the top are sponsored links placed there by
merchants who have paid for the right to have their website
appear in response to particular keywords.  These sponsored
links are known as bid-based "pay-per-click" (or "PPC") links
because merchants bid on keyword search terms.  If a website
owner outbids his competitors, an internet user using those
search terms will find the owner's website at or near the top of
the sponsored links section.

Just below these sponsored links are non-sponsored, or
"organic" links.  Organic links are links that appear in the
search results because the website content matches the keyword

search terms, as determined by the search engine's algorithms.[2] In Ms. Chansky's data set, the top row captures users who reached Granite State's website by clicking on an organic link.

Finally, Ms. Chansky's data captures users who reached Granite State's website through a referral or through social media.  A referral simply means that the user clicked on a link to Granite State's website posted on some other website.  For example, there was evidence that there are links to Granite State's website on the New Hampshire Department of Safety website.  Any user accessing Granite State's website via one of these third-party sites would be logged in the "Referral" row. The final row captures users who accessed Granite State's website via a link on a social media site, such as Twitter or Facebook.

Ms. Chansky testified that she believed NHSMT had implemented a PPC campaign on Google in or around February of 2015.  She explained that NHSMT had bid on certain keywords (like "New Hampshire trade school") which, when entered into Google, would prompt the URL www.nhtradeschool.net to appear at or near the top of the sponsored links section.  She further

---

[2] As an example, if an internet user was to type "car dealers Concord NH" into Google, the top two results would be sponsored links for local Kia and Mazda dealers, and just below those links would be organic links to other area dealerships.

explained that, when clicked, this URL would automatically redirect users to NHSMT's principal website, www.tnhsmt.com.

Ms. Chansky argued based on her data that NHSMT was responsible for the decline in enrollment at Granite State. She focused almost exclusively on the row showing the percentage of visits to Granite State's website from organic links. As depicted in the table above, this percentage steadily declined from 73% in February to 31% in June. Ms. Chansky attributed this decline to the fact that NHSMT's PPC campaign was driving internet users to NHSMT instead of Granite State.

Finally, Ms. Chansky explained that, in May of 2015, she and Mr. Fusco decided to implement a PPC campaign for Granite State. Like NHSMT's campaign, Granite State's campaign bids on relevant search terms. Ms. Chansky testified that the campaign has been successful and has driven Granite State's website to the top of Google's sponsored links section.[3]

II.   NHSMT's Evidence

NHSMT's sole witness was its co-founder, Dean Millard. In relevant part, Mr. Millard testified as follows. NHSMT was founded in 2010, and began offering courses in 2012. NHSMT

---

[3] Indeed, at the hearing, Granite State's counsel conducted a Google search for "new hampshire trade school." The results page placed Granite State's website atop the sponsored links, one spot above www.nhtradeschool.net. See Pl.'s Ex. 11.

currently offers a more extensive curriculum than Granite State, with live training and certification programs in gas, plumbing, electrical, oil heat, and HVAC installation and maintenance.

Like Granite State, NHSMT advertises via radio, direct mailing, and the internet, but unlike Granite State, NHSMT advertises on a larger scale, also utilizing newspaper and television advertisements. Compared to Granite State, NHSMT spends more money on advertising: $31,000 in 2013 and $37,000 in 2014, with $47,000 budgeted for 2015.

Mr. Millard explained that, from 2010 to 2012, while NHSMT was working toward opening its doors, it used www.tnhsmt.com as its sole URL. In 2012, however, while working on a television commercial, Mr. Millard was advised that "tnhsmt" was difficult to articulate. At the urging of the commercial's production director, NHSMT registered the URL www.nhtradeschool.com. Since 2012, NHSMT has used that URL in all of its print, radio, and television advertising. Mr. Millard explained that NHSMT began using the URL www.nhtradeschool.net more recently. In June of 2014, NHSMT launched a PPC campaign targeting specific search terms. In response to those search terms, sponsored links to the www.nhtradeschool.net URL appear at or near the top of the search results.

**Discussion**

"A preliminary injunction is an 'extraordinary and drastic remedy;' it is never awarded as of right." Munaf v. Geren, 553 U.S. 674, 689-90 (2008) (quoting 11A C. Wright, A. Miller & M. Kane, Federal Practice & Procedure § 2948, at 129 (2d ed. 1995) (further citations omitted)).  Rather, "[a] plaintiff seeking a preliminary injunction must establish that he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the public interest." Winter v. Natural Res. Def. Council, Inc., 555 U.S. 7, 20 (2008); see also Bl(a)ck Tea Soc'y v. City of Bos., 378 F.3d 8, 11 (1st Cir. 2004).  The court will assess each of these four elements in turn, mindful that the burden of satisfying them rests and remains with the party seeking the injunction. Esso Standard Oil Co. (P.R.) v. Monroig-Zayas, 445 F.3d 13, 18 (1st Cir. 2006).

I.   Likelihood of Success on the Merits

"Though each factor is important . . . 'the sine qua non of [the] four-part inquiry is likelihood of success on the merits: if the moving party cannot demonstrate that he is likely to succeed in his quest, the remaining factors become matters of idle curiosity.'"  Sindicato Puertorriqueño de Trabajadores,

SEIU Local 1996 v. Fortuño, 699 F.3d 1, 10 (1st Cir. 2012) (per curiam) (quoting New Comm Wireless Servs., Inc. v. SprintCom, Inc., 287 F.3d 1, 9 (1st Cir. 2002) (alteration omitted)).  In cases involving trademarks, as here, the likelihood of success inquiry "plays an even greater role because resolution of the other three factors will depend, in large part, on whether the plaintiff is likely to succeed in establishing infringement." Peoples Fed. Sav. Bank v. People's United Bank, 750 F. Supp. 2d 217, 221 (D. Mass. 2010), aff'd, 672 F.3d 1 (1st Cir. 2012). "To demonstrate likelihood of success on the merits, plaintiffs must show more than mere possibility of success – rather, they must establish a strong likelihood that they will ultimately prevail." Sindicato Puertorriqueño, 699 F.3d at 10 (citations omitted) (internal quotation marks omitted).

Granite State has brought claims against NHSMT for unfair competition, violation of the New Hampshire consumer protection statute, N.H. Rev. Stat. Ann. § 358-A, and violation of the Lanham Act, 15 U.S.C. §§ 1125(a) and (d).  While distinct causes of action, all three require Granite State to show that: (1) its mark is distinctive; and (2) NHSMT's alleged infringement is likely to cause confusion among consumers.  See Ligotti v. Garofalo, 562 F. Supp. 2d 204, 214 (D.N.H. 2008).  Therefore, Granite State must be able to satisfy both of these elements in order to establish a likelihood of success on the merits.

A.   Is Granite State's Mark Distinctive?

A mark is entitled to trademark protection if it is capable of functioning as a source identifier of goods.  Bos. Duck Tours, LP v. Super Duck Tours, LLC, 531 F.3d 1, 12 (1st Cir. 2008).  Trademark law categorizes marks along a "spectrum of distinctiveness, based on their capacity to serve such a source-identifying function."  Id. (footnote omitted).  "A mark is classified as: (1) generic (least distinctive), (2) descriptive, (3) suggestive, (4) arbitrary, or (5) fanciful (most distinctive)."  Id. (citations omitted).

Here, Granite State contends that "Granite State Trade School" is a descriptive mark.  A descriptive mark is one that "convey[s] an immediate idea of the ingredients, qualities or characteristics of the goods to which they are attached . . . [but is] not inherently capable of serving as [a] source-identifier[] . . . ."  Id. at 13 (citations omitted) (internal quotation marks omitted).  Generally, a descriptive mark is not entitled to trademark protection unless it has become associated with a single commercial source, such that the phrase is said to have acquired "secondary meaning."  Id. (citing 15 U.S.C. § 1052(f)).  "A mark is, therefore, considered distinctive (and, thus, eligible for trademark protection) if it either is inherently distinctive or exhibits acquired distinctiveness gained through secondary meaning."  Id. (quoting Borinquen

12

Biscuit Corp. v. M.V. Trading Corp., 443 F.3d 112, 116-17 (1st Cir. 2006)).  Where, as here, the mark is geographically descriptive, "secondary meaning has been established . . . where the mark no longer causes the public to associate the goods with a particular place, but to associate the goods with a particular source."  Bos. Beer Co. Ltd. P'ship v. Slesar Bros. Brewing Co., 9 F.3d 175, 181 (1st Cir. 1993).

In assessing whether the phrase "Granite State Trade School" has acquired secondary meaning, the court considers: (1) the length and manner of Granite State's use of the term; (2) the nature and extent of advertising and promotion of the mark; (3) the efforts made in the direction of promoting a conscious connection, in the public's mind, between the name or mark and a particular product or venture, id. at 182; and (4) Granite State's size and prominence, Peoples Fed. Sav. Bank, 750 F. Supp. 2d at 223.  Establishment of secondary meaning entails "vigorous evidentiary requirements," and Granite State bears the burden of proving that its name has acquired secondary meaning. Bos. Beer Co., 9 F.3d at 181 (citations omitted) (internal quotation marks omitted).

Though a close call, the available evidence is sufficient to support a finding that the mark "Granite State Trade School" has acquired a level of secondary meaning.  As an initial matter, in assessing the length and manner of Granite State's

use of the mark, Granite State has used the term "Granite State Trade School" widely and continuously since its founding in 2006.  For example, Granite State is registered to do business in New Hampshire under the name "Granite State Trade School," and is listed on the state Department of Safety website as an accredited program for educational instruction.  See Pl.'s Exs. 1, 3.  Furthermore, Mr. Fusco testified that, until NHSMT began offering courses in 2012, Granite State essentially operated without competition, allowing the local trade community to become familiar with its brand.

The court also considers the nature and extent of Granite State's advertising and promotion of its mark.  Mr. Fusco testified that Granite State has spent some $58,000 on radio and direct mail advertising since 2007.  As an exhibit, Granite State submitted the text of three of its radio advertisements, all of which repeatedly reference "Granite State Trade School," and its URL, www.granitestatetradeschool.com.  See Pl.'s Ex. 5. This evidence demonstrates not only active advertising and promotion of Granite State's brand, but an attempt by Granite State to create a conscious connection between the mark "Granite State Trade School" and its particular set of services.

Finally, the court considers Granite State's size and prominence.  The evidence suggested that Granite State is a small operation.  For example, it only offers four live courses,

14

all of which are taught by Mr. Fusco. Nevertheless, Mr. Millard of NHSMT candidly admitted that members of the trade community in New Hampshire associate the term "Granite State" with Granite State Trade School specifically, rather than with a generic trade school that happens to be located in New Hampshire. This concession carried significant weight because of Mr. Millard's familiarity with the New Hampshire trade school industry. See Bos. Duck Tours, 531 F.3d at 18 (noting that "[t]he touchstone of the analysis remains the phrase's primary significance to the relevant public"). In sum, though a close call, the evidence is sufficient to conclude that "Granite State Trade School" has acquired a level of secondary meaning entitling it to trademark protection.

    B.   Will NHSMT's Infringement Likely Cause Confusion?

To establish a likelihood of success on the merits – the first of four elements required to receive a preliminary injunction – Granite State must prove not only that its mark is distinctive, but that NHSMT's alleged infringement is likely to cause consumer confusion. In assessing whether NHSMT's alleged infringement is likely to cause confusion among consumers, the court considers the eight so-called "Pignons" factors:[4] (1) the

---

[4] See Pignons S.A. de Mecanique de Precision v. Polaroid Corp., 657 F.2d 482 (1st Cir. 1981).

similarity of the marks in question; (2) the similarity of the services offered; (3) the relationship between the parties' channels of trade;[5] (4) the relationship between the parties' advertising; (5) the classes of prospective purchasers; (6) evidence of actual confusion; (7) NHSMT's intent in adopting its mark; and (8) the strength of Granite State's mark.  Peoples Fed. Sav. Bank v. People's United Bank, 672 F.3d 1, 10 (1st Cir. 2012).  "A proper analysis takes cognizance of all eight factors but assigns no single factor dispositive weight."  Id. Moreover, it is not enough for Granite State to show a mere theoretical possibility of confusion; "the allegedly infringing conduct must create a likelihood of confounding an appreciable number of reasonably prudent purchasers exercising ordinary care."  Bos. Duck Tours, 531 F.3d at 12 (citations omitted) (internal quotation marks omitted).

Several of these factors favor Granite State.  NHSMT and Granite State offer similar services and occupy the same channel of trade in that both train and accredit tradesmen.  They also use similar channels of advertising in that both rely on radio advertisements, direct mail marketing, and an internet presence. Likewise, both target the same prospective purchasers, namely

---

[5] A channel of trade refers to the environment in which the consumer acquires the product.  For example, there is a distinction between wholesale and retail channels of trade.

New Hampshire residents considering a career in the trades.
Finally, as described above, the evidence established that
Granite State's mark is fairly well-recognized within its
industry.

Nevertheless, the remaining factors heavily favor NHSMT.
As an initial matter, the marks in question are dissimilar.
Granite State argues that NHSMT's use of www.nhtradeschool.com
and .net is likely to confuse consumers for two reasons.  First,
Granite State notes that it perverts NHSMT's actual name.  NHSMT
is not called The New Hampshire Trade School; it is called The
New Hampshire School of Mechanical Trades.  Second, Granite
State argues that prospective students view the terms "New
Hampshire" and "Granite State" as interchangeable, such that
they are likely to believe that www.nhtradeschool.com (or .net)
is affiliated with (or is) a website for Granite State, whose
website is located at www.granitestatetradeschool.com.

This is an unusual URL infringement case.  Typically, URL
infringement claims are based on one of two scenarios.  In the
first scenario, the infringer intentionally registers a URL that
resembles a well-known URL in the hopes that users will
carelessly click on his website (a practice known as
"typosquatting").  See, e.g., World Mkt. Ctr. Venture, LLC v.
Tex. Int'l Prop. Assocs., No. 2:08-cv-01753-RCJ-GWF, 2009 WL
3303758 (D. Nev. Oct. 14, 2009) (Las Vegas-based owner of the

17

website www.lasvegasmarket.com sued defendant registrant of the
intentionally misspelled www.lasvagasmarket.com).

In the second scenario, the infringer modifies a URL,
typically by pluralizing or adding a word, such that the
resulting URL falsely suggests a connection between his website
and an established brand.  See, e.g., Audi AG v. D'Amato, 469
F.3d 534 (6th Cir. 2006) (auto manufacturer and owner of
www.audi.com sued the unaffiliated user of the URL
www.audisport.com); Paccar Inc. v. Telescan Techs., L.L.C., 319
F.3d 243 (6th Cir. 2003) (manufacturer of Kenworth and Peterbilt
trucks sued unaffiliated user of URLs including
www.kenworthusedtrucks.com and www.peterbiltnewtrucks.com); PC
Connection, Inc. v. Crabtree, 754 F. Supp. 2d 317 (D.N.H. 2010)
(electronics manufacturer, PC Connection, sued technology
company that pluralized its name and added a hyphen in its URL,
www.pc-connections.com).

Granite State's claim is unique.  First, the URLs in
question, www.granitestatetradeschool.com and
www.nhtradeschool.com (and .net) are not visually similar.
There is virtually no risk that an internet user would
mistakenly click on one while attempting to click on the other.
Cf. World Mkt. Ctr., 2009 WL 3303758, at *1
(www.lasvegasmarket.com versus www.lasvagasmarket.com).  Second,
the only portion of Granite State's URL that NHSMT has

18

reproduced in its own URL is the non-descript term "trade school." This is distinguishable from a scenario in which an alleged infringer modifies a reputable brand name to falsely imply an affiliation, like adding "sport" to Audi, or inserting the word "used" between Kenworth and trucks.

Ultimately, Granite State's claim is that the terms "New Hampshire" and "Granite State" are so inextricably intertwined in the minds of consumers that NHSMT's use of the abbreviation "NH" – not even the full name, New Hampshire - in its URL is likely to mislead the public. While New Hampshire is proudly known far and wide as the Granite State, the URL www.granitestatetradeschool.com is simply not similar enough to www.nhtradeschool.com (or .net) to risk confounding an appreciable number of reasonably prudent purchasers exercising ordinary care. Bos. Duck Tours, 531 F.3d at 12.

Next, Granite State's evidence of actual confusion was unpersuasive. As outlined above, this evidence consisted of the following: (1) Mr. Fusco's indication that his secretary receives several calls per week from students trying to reach NHSMT; (2) Mr. Brulotte's experience inadvertently registering for a course at NHSMT; and (3) Ms. Chansky's data showing a decline in organic site visits to Granite State's website. None of this evidence withstands even a cursory challenge.

First, the fact that some students have mistakenly called
Granite State while attempting to contact NHSMT is perhaps
evidence of confusion, but it is not the sort of confusion that
Granite State needs to prove its case.  If anything, this is
evidence that some consumers have confused Granite State for
NHSMT, not the other way around, as Granite State has alleged.
What is more, Mr. Fusco did not offer any evidence that the
source of this confusion relates to NHSMT's use of URLs that are
confusingly similar to Granite State's URL.

Next, Mr. Brulotte's experience, while no doubt frustrating
for him, is weak evidence of actual confusion.  The actual
confusion inquiry focuses on reasonably prudent purchasers who
exercise ordinary care.  Id.  Mr. Brulotte candidly admitted
that he was in a rush, did not pay attention to his internet
search, and carelessly clicked on the top link without giving
the matter further thought.

The evidence established that, unlike Mr. Brulotte, the
vast majority of prospective students cautiously explore their
options.  This is particularly true given that the courses that
Granite State and NHSMT offer are expensive and time-intensive.
Mr. Fusco and Mr. Millard both testified that they regularly
meet with prospective students for tours and to answer
questions.  In this context, even if the court were to find a
similarity between the URLs in question (which it has not), the

20

risk of confusion would be mitigated by the nature of the
services being offered.  See Heartsprings, Inc. v. Heartspring,
Inc., 949 F. Supp. 1539, 1544 (D. Kan. 1996) (noting that,
unlike with cheap, everyday products, consumers exercise a high
degree of care when purchasing expensive educational services,
decreasing the risk of confusion).

Finally, Ms. Chansky's testimony and data did not
convincingly establish a likelihood of confusion.  For ease of
reference, Ms. Chansky's data is again reproduced here:

|  | **Feb. 2015** | **Mar. 2015** | **Apr. 2015** | **May 2015** | **June 2015** |
|---|---|---|---|---|---|
| **Organic Search** | 596 | 748 | 595 | 439 | 569 |
| **% Organic** | 73% | 57% | 55% | 32% | 31% |
| **Referral** | 121 | 409 | 328 | 329 | 423 |
| **Direct** | 96 | 157 | 154 | 616 | 845 |
| **Social** | 4 | 4 | 2 | 2 | 3 |
| **Total** | 817 | 1318 | 1079 | 1386 | 1840 |

As noted above, Ms. Chansky based her conclusion that
consumers were confused by NHSMT's URL on the fact that Granite
State saw monthly declines in the number of organic site visits
between February and June of 2015.  Critically, Ms. Chansky only
focused on the percentage of organic site visits, rather than
the total number of visits.

21

For example, in February, Granite State's website received a total of 817 visits.  596, or 73% of these, were organic; 121 were via a referral; 96 were direct; and four were via social media.  In June, the website received 1840 total visits.  569, or 31% of these, were organic; 423 were via a referral; 845 were direct; and three were via social media.

What this data shows, in essence, is that during the period of time when Ms. Chansky claimed that consumers were being deceived by NHSMT's implementation of a PPC campaign using the URL www.nhtradeschool.net, total traffic to Granite State's website in fact more than doubled from 817 in February to 1840 in June.  While the percentage of organic site visits declined, the actual number of organic site visits remained largely unchanged (596, 748, 595, 439, and 569).  Simultaneously, the number of direct and referral visits skyrocketed.  In other words, the percentage-based decline is attributable not to a decline in organic visitors, but to a spike in other traffic on the website.  In the court's view, this is not compelling evidence of actual consumer confusion.[6]

---

[6] When the court asked Ms. Chansky about this issue during her testimony, she opined that Granite State should expect to see an increase in overall traffic in the spring, as this corresponds to the period of time in which many of its courses are offered.  Ms. Chansky, however, was unable to supply historical data supporting this theory.

The last of the <u>Pignons</u> factors calls on the court to
assess NHSMT's intent in using the challenged URLs.  Mr. Millard
testified convincingly that NHSMT had no ill intent whatsoever.
He explained that NHSMT began using www.nhtradeschool.com in
2012 in response to feedback from a television production
manager that its then-current URL, www.tnhsmt.com, was difficult
to articulate and convey in spoken advertising.  Granite State
did not produce evidence of any kind that NHSMT intended the
URLs to deceive or mislead.

In sum, the court finds that Granite State is unable to
demonstrate a likelihood of consumer confusion.  While Granite
State and NHSMT occupy a similar market niche, the marks in
question are dissimilar, there was virtually no evidence of
actual confusion, and NHSMT did not have an intent to deceive.
Because Granite State cannot establish a likelihood of consumer
confusion, an essential element of all three of its claims,
Granite State is unable to demonstrate a likelihood of success
on the merits – the threshold requirement to obtain preliminary
injunctive relief.

II.  <u>Irreparable Harm in the Absence of Relief</u>

Even if the court were to overlook Granite State's
inability to establish a likelihood of success on the merits,
Granite State cannot satisfy its burden of demonstrating

irreparable harm in the absence of relief.  The obligation of
the movant to demonstrate irreparable harm is an important
prerequisite to obtaining preliminary injunctive relief.  Voice
of the Arab World, Inc. v. MDTV Med. News Now, Inc., 645 F.3d
26, 32 (1st Cir. 2011).  It is not enough that the movant
demonstrate the mere possibility of irreparable harm; rather,
the movant must show that, in the absence of a temporary
injunction, irreparable harm is likely.  Respect Maine PAC v.
McKee, 622 F.3d 13, 15 (1st Cir. 2010).

     A central premise behind Granite State's seeking of a
preliminary injunction is the fact that NHSMT had just recently
begun using the www.nhtradeschool.com and .net URLs.  For
example, Mr. Fusco testified that Granite State's student
enrollment was "keeping pace" with 2013 and 2014, until April of
2015 when he experienced a sudden drop-off.  Mr. Fusco blamed
the drop-off on NHSMT because at approximately that time he
first heard a radio advertisement in which NHSMT directed
listeners to the www.nhtradeschool.com URL.  Separately, based
on her data, Ms. Chansky opined that NHSMT had begun its PPC
campaign using www.nhtradeschool.net in February of 2015.

     The evidence established that both Mr. Fusco's and Ms.
Chansky's assumptions were incorrect.  Mr. Millard testified
that NHSMT has used the www.nhtradeschool.com URL consistently
and exclusively in its television, radio, and print advertising

                              24

since 2012.  He also testified that NHSMT began its PPC campaign using www.nhtradeschool.net in June of 2014, some eight months earlier than Ms. Chansky had assumed.

In addition to Mr. Fusco's testimony that enrollment was consistent until April of 2015, Granite State submitted financial records showing that in both 2013, and again in 2014, it achieved record total revenues.  See Pl.'s Ex. 7.  Given that NHSMT was using the www.nhtradeschool.com URL during this entire period, and was using the www.nhtradeschool.net URL for the latter half of 2014 and into 2015, Granite State simply cannot demonstrate a risk of irreparable harm in the absence of preliminary injunctive relief.  This is so because the periods during which NHSMT was allegedly infringing coincided with periods of record success and productivity for Granite State.

III. Balance of the Equities and the Public Interest

The remaining elements required for preliminary injunctive relief call upon the court to assess the balance of the equities among the parties, and the public interest (if any) in the issuance of an injunction.  The balancing of the equities inquiry requires the court to weigh "the hardship that will befall the nonmovant if the injunction issues contrasted with the hardship that will befall the movant if the injunction does not issue."  Borinquen Biscuit Corp, 443 F.3d at 115.  The First

25

Circuit has noted that, of course, "substantial consumer confusion . . . is not in the public interest." Mercado-Salinas v. Bart Enters. Int'l, Ltd., 671 F.3d 12, 24 (1st Cir. 2011).

For the reasons described above, Granite State has not established that NHSMT's use of the www.nhtradeschool.com and .net URLs has adversely affected it in any way.  In fact, the evidence established not only that NHSMT has been using these URLs for an extended period of time, but that traffic to Granite State's website increased significantly during the relevant periods.  Therefore, Granite State cannot establish that the balance of the equities tips in its favor.  Nor has Granite State demonstrated substantial consumer confusion that might implicate the public's interest in the issuance of an injunction.

## Conclusion

Granite State has not established its right to a preliminary injunction, relief which the Supreme Court has characterized as "extraordinary and drastic." Munaf, 553 U.S. at 689.  Therefore, Granite State's motion for preliminary injunction (doc. no. 5) is denied.

SO ORDERED.

_____
Landya McCafferty
United States District Judge

August 3, 2015

cc:   Gary M. Burt, Esq.
      Thomas J. Pappas, Esq.
      Frank P. Spinella, Jr., Esq.